IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GOSIA S.                                    :              CIVIL ACTION
               Plaintiff                :
      v.                                   :
                              :
FRANK BISIGNANO,                            :
Commissioner of the Social Security         :
Administration,                             :
              Defendant                :              NO.  25-3392

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                        February 25, 2026

     Gosia S. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final

decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying her claim for  Disability Insurance Benefits ("DIB") under Title II of the Social Security

Act.   Plaintiff has filed a brief in support of her request for review, the Commissioner has

responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request

for review is granted and the case remanded to the Commissioner.

## I.      PROCEDURAL HISTORY[1]

     On June 3, 2022, Plaintiff applied for DIB, alleging that her disability commenced on

November 14, 2020.  R. 17.  The claim was denied initially and upon reconsideration; therefore,

Plaintiff requested a hearing.  *Id.*  On May 31, 2024, Plaintiff appeared for a telephonic hearing,

before Marc Silverman, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an

attorney and vocational expert Charles Smolkin, ("the VE"), testified at the hearing.  *Id.*  On June

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of her Request for Review ("Pl. Br."), the Brief of Defendant ("Resp."), Plaintiff's Reply to Brief of Defendant ("Reply"), and the administrative record.  ("R.").

13, 2024, the ALJ, using the sequential evaluation process ("SEP") for disability,[2] issued an unfavorable decision. R. 17-30. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on May 22, 2025, making the ALJ's decision the Commissioner's final determination. R. 1-3. Plaintiff presently seeks judicial review, and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.    Personal History

Plaintiff, born on July 2, 1975, R. 28, was 49 years old on the date of the ALJ's decision. She was fired from her last job, R. 48, in 2020. Plaintiff lives with her husband and six-year old daughter. R. 57.

B.    Plaintiff's Testimony

At the May 31, 2024 administrative hearing, Plaintiff testified about her limitations. Anxiety and depression caused her to be fired from her last job; she was coming in late two to

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

three times per week and, sometimes, she did not come to work. R. 47-48. Plaintiff has treated with Dr. Flood, her psychiatrist, for approximately 12 years; Dr. Flood tried several medications and dosages to control her symptoms. R. 48. The medication Plaintiff takes causes numerous side-effects, including headaches, dizziness, nausea, and short-term memory problems. R. 49. Because of anxiety and depression, Plaintiff does not groom herself daily. R. 54.

Plaintiff's racing thoughts prevent her from having simple conversations. R. 52. Her panic attacks cause sweating, rapid heartbeat, difficulty breathing and inability to function mentally. R. 54. Plaintiff also experiences migraine headaches, approximately twice per week; to alleviate them, she takes Advil and lies down in a dark room. R. 55.

Plaintiff experiences back pain, which limits her ability to sit and stand for extended periods of time. R. 55-56. She estimated she could sit for no more than one hour at a time and stand for five to ten minutes at a time. R. 55-56. Plaintiff also suffers hand pain, for which she wears braces, and which cause her to drop objects. R. 56-57.

C.    Vocational Testimony

The VE classified Plaintiff's past three jobs as bookkeeper and accounting clerk as sedentary[3] and semi-skilled.[4] The ALJ asked the VE to consider a person having Plaintiff's age, education and work experience who could perform light[5] work and who: can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; can stoop, crouch, kneel, and crawl occasionally; must avoid concentrated exposure to extreme cold, humidity, and vibration;

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

can tolerate only occasional exposure to unprotected heights; can perform simple tasks; can tolerate no more than occasional exposure to supervisors, but would be able to have frequent interaction during a 30-day training period; can work in close proximity to others, but with only brief, incidental interaction with others and no tandem jobs requiring cooperation with other workers to complete the task; can tolerate no interaction with the general public; and can tolerate only low stress work, which is defined as routine work with no more than occasional changes in the work. R. 60-61. The VE opined that, although this individual could not perform Plaintiff's past work, they could perform three unskilled[6] jobs: (1) marker, 163,000 positions in the national economy; (2) router, 28,000 positions in the national economy; and (3) lab sample carrier, 11,000 positions in the national economy. R. 61. The ALJ then asked the VE to consider the same person but needing one unscheduled absence every other month. R. 62. The VE opined that this person could perform the same three jobs, however, the number of available work would decline by 50%. R. 63. The VE opined that an employee who was consistently absent twice per month or was off-task 10% of the workday would be unemployable. R. 63-64. Finally, the three jobs the VE had identified were unskilled, hence, if the employee required reminders to complete assigned tasks, she would be unable to perform the jobs. R. 64.

### III.   THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1.   [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.

2.   [Plaintiff] has not engaged in substantial gainful activity since November 20, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

3.  [Plaintiff] has the following severe impairments: depression; anxiety disorder; attention deficit hyperactivity disorder (ADHD); post-traumatic [stress] disorder (PTSD); and degenerative disc disease (20 CFR 404.1520(c)).

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following additional limitations. [Plaintiff] can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; can stoop, crouch, kneel, and crawl occasionally; must avoid concentrated exposure to extreme cold, humidity, and vibration; no more that occasional exposure to unprotected heights; limited to simple tasks; no more than occasional exposure to supervisors, but would be able to have frequent interaction during a 30-day training period; can work in close proximity to others, but with only brief, incidental interaction with others and no tandem jobs requiring cooperation with other workers to complete the task; no interaction with the general public; and limited to low stress, which is defined as routine work with no more than occasional changes in the work.

6.  [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7.  [Plaintiff] was born on July 2, 1975, and was 45 years old, which is defined as a younger individual age 18-49, on the disability onset date (20 CFR 404.1563).

8.  [Plaintiff] has at least a high school education (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled" whether or not [she] has transferrable skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience,

5

and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569 and 404.1569a).

11.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 14, 2020, through the date of this decision (20 CFR 404.1520(g)).

R. 19-21, 28-29.

## IV.    DISCUSSION

A.    Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other work and, hence, was not disabled. R. 17-30.  Plaintiff disputes the ALJ's decision, arguing that the ALJ's assessment of her mental residual functional capacity ("RFC") was illogical and based upon the failure to

7

evaluate properly the opinions of her treating psychiatrist which were that she was much more limited than the ALJ determined in his RFC assessment. Pl. Br. at 3-15. The Commissioner denies Plaintiff's arguments. Resp. at 1-12. This court finds that Plaintiff's arguments have merit.

Plaintiff first argues that the ALJ's RFC determination that she could only tolerate occasional interaction with supervisors but would be able to tolerate frequent interaction with supervisors throughout a 30-day training period defies logic. Pl. Br. at 4. This court agrees.

Recently, the undersigned was faced with the same RFC determination by the same ALJ and noted that it was facially illogical, requiring remand. *Yazmin Q. v. O'Malley*, Civ. A. No. 24-1531, 2024 WL 4567277, *6 (E.D. Pa. Oct. 24, 2024). This court sees no reason to distinguish this case from *Yazmin Q.*, especially since the Commissioner makes no effort to distinguish *Yazmin Q.*[7] Hence, this case must be remanded so that the ALJ can explain how it is that Plaintiff can only tolerate occasional interaction with supervisors, yet, in her initial 30-day training period, could tolerate frequent interaction with supervisors.

Next, Plaintiff argues that other components of the ALJ's mental RFC assessment were based upon a legally erroneous evaluation of her treating psychiatrist's opinions, which were much more restrictive than the ALJ assessed. Pl. Br. at 5-15. This court agrees.

The governing regulation states that, when evaluating medical opinions, an ALJ is only required to explicitly consider supportability and consistency when deciding whether a source's medical opinions are persuasive. 20 C.F.R. § 404.1520c(b)(2). Supportability is the objective medical evidence and explanations the medical source provides. 20 C.F.R. § 404.1520c(c)(1). Consistency requires comparing the medical source's opinions to the other evidence provided by medical and non-medical sources in the record. 20 C.F.R. § 404.1520c(c)(2). The Third Circuit

---

[7] Rather than distinguish *Yazmin Q.*, the Commissioner ignores the existence of the case, which Plaintiff cites in her opening brief and, instead, asserts that the ALJ's FRC determination was not illogical. Resp. at 9 n.5.

has concluded that these regulations are not inconsistent with the governing statute. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

Plaintiff's treating psychiatrist, Mark Flood, M.D., treated her for 12 years. R. 48. He rendered opinions concerning Plaintiff's ability to perform the mental functions of work on two occasions: November 29, 2023 and April 16, 2024. The ALJ noted that, in the 2023 assessment, Dr. Flood opined that Plaintiff was seriously impaired in the ability:

> to understand and remember short and simple instructions, sustain ordinary routine without supervision, make simple work-related decisions, perform at a consistent pace, get along with coworkers or peers, respond appropriately to changes in a routine work setting, deal with normal stress, set realistic goals or plans, and deal with stress of skilled/semi-skilled work, interact with general public. I note that seriously limited appears to equate to a moderate limitation in these areas. He found that [Plaintiff] is unable to meet competitive standards in her abilities to remember work-like procedures, maintain attention for two hour segments, maintain regular attendance and punctuality, work in coordination with or proximity to others, complete a normal workday or workweek, accept instructions and criticism from supervisors, understand and remember detailed instructions, carry out detailed instructions, travel in unfamiliar places, and use public transportation. Unable to meet competitive standards appears to equate to a marked limitation in functioning.

R. 27. The ALJ found that these limitations were not persuasive, because Dr. Coleman's opinions resulting from his consultative examination were less restrictive as were some of his treatment note opinions. *Id.* The ALJ also expressed the view that Plaintiff's reports of her own abilities were less restrictive. *Id.*

It is apparent that the ALJ failed to engage in the required supportability analysis, because he failed to address the support Dr. Flood provided for his 2023 opinions.[8] Furthermore, the first explanation the ALJ provided is refuted by his own decision. In the paragraph that preceded his

---

[8] Dr. Flood identified the support for his opinions as follows: "Plaintiff's mental status is commensurate with her anxious/depressed mood, fear, insecurity, and loss of self-esteem." R. 1082.

analysis of Dr. Flood's 2023 opinions, the ALJ explained that consultative examiner Dr. Coleman's opinions were not fully persuasive, because they were inconsistent with Dr. Flood's treatment summary and mental status examinations. R. 27. The ALJ's earlier partial rejection of Dr. Coleman's opinions undermines his later decision to rely on Dr. Coleman's unpersuasive opinions to justify finding Dr. Flood's more restrictive opinions unpersuasive. As Plaintiff notes, the ALJ's explanation in this regard is "internally inconsistent". *See* Pl. Br. at 10-11. Upon remand, the ALJ must comply with the law and explicitly consider the support Dr. Flood provided for his 2023 opinions and the ALJ must not consider Dr. Coleman's opinions when engaging in the required consistency analysis.

The ALJ also considered Dr. Flood's April 16, 2024 opinions:

> [Dr. Flood] found that [Plaintiff] was seriously limited in most areas of work-related functioning and was unable to meet competitive standards only in her abilities to use public transportation and to travel in unfamiliar places. He also noted that she would be absent from work four or more days a month (Exhibit 20F). This opinion is more persuasive, but nonetheless assesses limitations which are not supported by mental status examinations and treatment notes and not consistent with claimant's self-reports of her capabilities.

R. 27.

Once again, the ALJ failed to mention the support Dr. Flood provided for these opinions.[9] This time, he did not rely upon Dr. Coleman's unpersuasive opinions but again cited mental status examinations, and Plaintiff's self-reported activities. The ALJ's failure to address supportability requires remand for the ALJ to provide the proper analysis. It may be that, despite the support Dr. Flood provides for his 2024 opinions, the ALJ might find his opinions unpersuasive, because the inconsistent evidence the ALJ identifies outweighs the support Dr. Flood provides. However, that

---

[9] Dr. Flood identified the support for his opinions as follows: "Patient is struggling, low energy and fatigue, no motivation, lacks drive, insecurities, depression, anxiety, negative thoughts, no suicidal ideation." R. 1254.

analysis must be performed by the ALJ, not this court. *See Fargnoli*, 247 F.3d at 44 n.7 (explaining that the reviewing court is not authorized to comb the record and provide an analysis that the ALJ omitted). Upon remand, the ALJ must consider **both** supportability and consistency to determine whether Dr. Flood's 2024 opinions are persuasive.

An implementing order and order of judgment follow.